UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| MIRSAD HAJRO, | No. C 10-01772 MEJ |
| Petitioner, | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Dkt. #14]** |
| v. | |
| ROBIN BARRETT, San Francisco Field Office Director; United States Citizenship and Immigration Services, | |
| Defendant. | |

## I. INTRODUCTION

In this action, Petitioner Mirsad Hajro seeks review of the United State Citizenship and Immigration Services' ("USCIS") denial of his Form N-400 Application for Naturalization pursuant to 8 U.S.C. § 1421(c). Petition, Dkt. No. 1. On January 12, 2010, USCIS denied Petitioner's Form N-400 Application, finding that Petitioner gave false testimony with the intent to obtain an immigration benefit and therefore lacked the good moral character required for naturalization. *See* Administrative Record ("A.R.") at 1-8, Dkt. #14-1. The Government now moves for summary judgment, arguing that USCIS properly denied Petitioner's Application. Because the Court finds that this matter is suitable for disposition based on the parties' briefs and that oral argument would not assist the Court in its decision, the Court **VACATES** the hearing set for June 2, 2011. After a thorough review of the administrative record, and after careful consideration of the parties' arguments, the Court **DENIES** the Government's Motion for Summary Judgment and sets this matter for bench trial.

## II. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native of Bosnia. A.R. 168. On August 10, 1999, he was issued a K-1 Nonimmigrant Fiancé Visa and he entered the United States on September 7, 1999. A.R. 160, 168.

Soon thereafter, on September 28, 1999, Petitioner married Jennifer Gilbert, a U.S. citizen. A.R. 98 ¶ 3; Pet. ¶ 7.

Subsequently, on November 2, 1999, Petitioner filed a Form I-485 Application to Register Permanent Residence or Adjust Status. A.R. 159-62. Section 3.C of the Application stated in pertinent part:

> List your present and past membership in or affiliation with every political organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place since your 16th birthday. Include any foreign military service in this part. If none, write "none". Include the name of the organization, location, dates of membership from and to, and the nature of the organization.

A.R. 160. In response, Petitioner wrote "None." *Id*.

On November 13, 2000, an Immigration and Naturalization Service adjudication s officer interviewed Petitioner and his wife in connection with his I-485 Application. A.R. 159; Pet. ¶ 14. Following the interview, the adjudications officer approved Petitioner's I-485 Application and granted him permanent resident status. A.R. 159; Pet. ¶ 15.

Three years later, on November 6, 2003, Petitioner filed an N-400 Application for Naturalization pursuant to 8 U.S.C. § 1430(a) with the INS. A.R. 102-111; Pet. ¶ 16. In Part 10, subpart B of the Application, entitled "Additional Questions - Affiliations," question 8 stated:

> 8. a. Have you **EVER** been a member of or associated with any organization, fund, foundation, party, club, society, or similar group in the United States or in any other place?

A.R. 108. Petitioner checked the "No" box. *Id*. On March 4, 2004, an INS officer interviewed Petition on his N-400 Application. A.R. 102. On September 26, 2007, USCIS interviewed Petitioner a second time in connection with his N-400 Application. A.R. 100; Pet. ¶ 23. [Response to question re military]

On October 9, 2007, USCIS denied Petitioner's N-400 Application, finding that Petitioner lacked the good moral character required to be naturalized. A.R. 101. Specifically, the decision indicated that during the March 4, 2004 and September 26, 2007 interviews, Petitioner testified regarding his service in the army in Bosnia beginning in 1994, but had not disclosed such military

2

service either on his Form I-485 Application or during his interview on that Application in November 13, 2000. A.R. 101.

On November 7, 2007, Petitioner appealed the denial of his N-400 Application by filing a Form N-336 Request for Hearing on Decision in Naturalization Proceedings. A.R. 70-71, 73-90. USCIS held a hearing on the appeal on October 16, 2008, and subsequently affirmed the denial of his Application on November 26, 2008. A.R. 65-69; Pet. ¶ 29.

In the interim, on November 29, 2007, Petitioner filed a second N-400 Application for Naturalization. A.R. 36-46, 64; Pet. ¶ 33. On January 13, 2009, USCIS interviewed Petitioner regarding his November 2007 N-400 Application. Pet. ¶ 35. On March 31, 2009, USCIS issued its decision denying Petitioner's November 2007 N-400 Application for lack of good moral character. A.R. 31-35; Pet. ¶ 36. In its decision, USCIS found that Petitioner provided "mutually incompatible" testimony on September 26, 2007 and October 16, 2008 regarding the weaponry he carried during his activities in the Bosnian War and that he provided the testimony with the subjective intent to cover up or divert attention away from conduct he thought might jeopardize his entitlement to naturalize. A.R. 33. It also found that Petitioner had engaged in a pattern and practice of providing false testimony in order to obtain immigration benefits based on his alleged failure to disclose his service in the Bosnian military on his I-485 Application and during prior interviews with USCIS. A.R. 33-34.

In response, on April 22, 2009, Petitioner filed a Form N-336 Request for Hearing on Decision in Naturalization Proceedings, appealing the denial of his November 2007 N-400 Application. Pet. ¶ 27. On October 22, 2009, Petitioner appeared for a hearing on his appeal. *See* A.R. 1. On January 12, 2010, USCIS issued its decision affirming the denial of Petitioner's N-400 Application. A.R. 1-8; Pet. ¶ 38. After reviewing Petitioner's testimony, USCIS found:

> The evidence establishes a pattern and practice on your behalf of providing false testimony to obtain immigration benefits. Your false testimony on November 13, 2000 (that you had never been a member of any political organization, association, fund, foundation, party, club, society, or military organization) was made, at least in part, with the subjective intent of obtaining lawful permanent resident status, a benefit under the immigration laws. Your false testimony on March 4, 2004, (that you had never been a member of any organization or group, besides the Power Engineering Club at BSU) was made, at least in part, with the subjective intent of

3

obtaining naturalization, a benefit under the immigration laws. The fact that you served in the a [sic] territorial defense group and the Bosnian military, could have led to further investigation into your admissibility or to your eligibility for naturalization on March 4, 2004. Accordingly, USCIS finds that you purposefully provided false testimony regarding your service in the territorial defense group and the Bosnian military to obtain your naturalization and to confirm your 2004 testimony to that offered in 2000, so as not to alert the government to a possible disqualifying factor or to open up an avenue of inquiry which could jeopardize either your attainment of permanent residence or your eligibility for naturalization. Further, you testimony on September 26, 2007, about the type of arms you carried during the territorial defense period, was made, at least in part, with the subjective intent of obtaining naturalization. Furthermore, USCIS finds that your statement on January 13, 2009, (that you were not sure if you carried an AK-47) was further misleading information made with the attempt to conform your 2007 testimony to your 2008 testimony. Finally, USCIS finds that the testimony you gave on March 4, 2004, January 13, 2009, and October 22, 2009, that you had never intentionally provided false information to a U.S. government official when applying for an immigration benefit, was also false testimony made for the purpose of gaining your naturalization.

[ . . . ]

USCIS therefore concludes that you have failed to establish that you are eligible for naturalization under Section 319(a). You have failed to demonstrate good moral character, by reason of having testified falsely within the three-year statutory period preceding the filing of your currently pending N-400 application for naturalization. Further, your patten and practice of providing false and misleading testimony in order to obtain immigration benefits precludes your from establishing the good moral character required for naturalization.

It is determined that you have not sufficiently overcome the reasons for the denial of your application for naturalization, and your application remains denied.

A.R. 7-8.

On April 23, 2010, Petitioner initiated this lawsuit pursuant to 8 U.S.C. § 1421(c), seeking a *de novo* review of his November 2007 N-400 Application for Naturalization.

### III. LEGAL STANDARD

Pursuant to 8 U.S.C. 1421(c), this Court is authorized to conduct a *de novo* review of Petitioner's N-400 Application for Naturalization.[1] In undertaking this review, the Court "has the

---

[1] Section 1421(c) states in its entirety:
A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall makes it own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

4

final word and does not defer to any of [USCIS's] findings or conclusions." *United States v. Hovsepian ("Hovsepian I")*, 359 F.3d 1144, 1162 (9th Cir. 2004).

In its current Motion, the Government seeks summary judgment denying Petitioner's Naturalization Application. Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment as to any claim or defense if the movant, by citing to particular parts of materials in the record, shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)[2]; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if, under the substantive law governing the claim or defense at issue, the fact is critical and might the outcome of the case. *See Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

## IV. DISCUSSION

**A.   Requirements for Naturalization**

In order to be naturalized, an applicant bears the burden of establishing each of the statutory requirements by a preponderance of the evidence. *See Hovsepian I*, 359 F.3d at 1168 (citing 8 C.F.R. § 316.2(b)). Here, the parties' dispute focuses on whether Petitioner sufficiently established that he was a person of good moral character during the relevant three-year residency period. 8 U.S.C. § 1427(a)(3); 8 C.F.R. §§ 316.2(a)(7), 319.1(a)(7).

The Ninth Circuit has held that the issue of whether an applicant possesses good moral character as required by 8 U.S.C. § 1427(a)(3) is a factual determination. *United States v. Hovsepian ("Hovsepian II")*, 422 F.3d 883, 885 (9th Cir. 2005) (*en banc*) (citing *Yuen Jung v. Barber*, 184 F.2d 491, 497 (9th Cir. 1950)). Although the Immigration and Naturalization Act does

---

[2] On December 1, 2010, a revised version of Rule 56 took effect. While portions of former Rule 56 have been amended, the Committee notes to the 2010 Amendments to Rule 56 indicate that the standard for granting summary judgment remained unchanged and do not affect court decisions construing and applying the language of Rule 56.

not define "good moral character," it does enumerate nine circumstances which preclude such a finding. 8 U.S.C. § 1101(f). In particular, 8 U.S.C. § 1101(f)(6) states that "one who has given false testimony for the purpose of obtaining any benefits under this chapter" cannot be found to have the good moral character required for naturalization. *See Kungys v. United States*, 485 U.S. 759, 779 (1988). As the Supreme Court explained, § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Kungys*, 485 U.S. at 779-80. Thus, the focus is on the applicant's intent when making the allegedly false statements, rather than on the materiality of the statements. *Id*. at 780. Significant for purposes of the instant Motion, the Ninth Circuit has recognized that, "[w]hether a person has the subjective intent to deceive in order to obtain immigration benefits is a question of fact." *Hovsepian II*, 422 F.3d at 887-88 (citing *Kungys*, 485 U.S. at 782).

**B.     The Government's Motion for Summary Judgment**

In its Motion, the Government argues that USCIS properly denied Petitioner's November 2007 Application for Naturalization because he gave false testimony on multiple occasions with the subjective intent to obtain an immigration benefit. It therefore asserts that, as a matter of law, Petitioner lacks the good moral character required to be naturalized.

In support, the Government contends that Petitioner gave inherently inconsistent and therefore false testimony within the relevant statutory period about the type of weaponry he carried while serving in the Bosnian defense force. Mot. at 9. It proffers that: (1) in September 2007, Petitioner orally testified under oath that he only carried a pistol as a member of a territorial defense group (citing A.R. 115); (2) in October 2008, Petitioner orally testified that in addition to a pistol, he also carried an AK-47 (citing A.R. 31); (3) in January 2009, Petitioner orally testified he was not sure if he carried an AK-47 (citing A.R. 6.); and (4) in October 2009, Petitioner orally testified that he occasionally carried an AK-47 (citing A.R. 6). Mot. at 9. According to the Government, "[s]ince [Petitioner] either did or did not carry an AK-47, these contradictory statements amount to false testimony." Mot. at 9.

6

1    Further, the Government argues that Petitioner made the allegedly false statements with the
2 intention of obtaining an immigration benefit.  First, the Government contends that "the subject
3 matter of the false testimony, namely whether or not [Petitioner] carried weapons during an armed
4 conflict, permits the reasonable inference that [Petitioner] gave the false testimony with the
5 subjective intent to obtain an immigration benefit."  Mot. at 9.  Specifically, the Government
6 advances that "the reasonable inference to be drawn from these false statements is that [Petitioner]
7 wanted to 'downplay' his involvement in an armed conflict out of fear that it may jeopardize his
8 naturalization application."  *Id*.

9    Second, the Government proffers other purportedly false statements from Petitioner from
10 outside of the statutory period, which, according to the Government, demonstrate that his statements
11 about the weaponry he carried in Bosnia were intentional.  Specifically, the Government points to
12 the following statements: (1) in January 2000, Petitioner told an INS officer than he never served in
13 a foreign military (citing A.R. 138, 164); (2) in September 2007, Petitioner indicated that he served
14 in the Bosnian army (citing A.R. 115); (3) in March 2004, Petitioner testified to an INS officer than
15 he has never made false or misleading statements to a U.S. government official, despite his failure to
16 disclose his involvement in the Bosnian army (citing A.R. 65-66).  Mot. at 9-10.  Based on these
17 statements, the Government asserts that Petitioner has a pattern and practice of making false
18 statements, which makes it "highly implausible that such statements were inadvertent or honest
19 mistakes."  Mot. at 10.

20    Taken together, the Government asserts that because Petitioner provided false testimony
21 regarding the weaponry he carried in Bosnia with the subjective intent to obtain an immigration
22 benefit during the relevant time period, he cannot establish good moral character and is precluded
23 from becoming naturalized.  The Government therefore requests that the Court enter summary
24 judgment denying Petitioner's N-400 Application.

25    Petitioner, however, maintains that the Government's request for summary judgment is
26 unfounded because any findings that he gave false testimony and therefore lacks the good moral
27 character required for naturalization involve questions of fact which cannot be resolved on the
28

7

current record. Opp'n at 1. Rather, Petitioner urges the Court to deny summary judgment and set this matter for an evidentiary hearing. Opp'n at 5.

In support of his argument that summary judgment is improper, Petitioner points to the following evidence, which he contends create disputed issues of material fact. As to the Government's argument that he provided false testimony regarding the type of weapons he carried, Petitioner argues that he explained that because he was not a soldier and was not involved in combat, he was never assigned a gun and only carried an AK-47 on a couple of occasions. Opp'n at 10, 19-21. He asserts that his testimony is not inconsistent and that he did not offer his statements regarding the weapons he carried to intentionally deceive the government to obtain an immigration benefit. Rather, he contends that his statements reflect his memory of the details surrounding his military service. Moreover, Petitioner asserts that his statements demonstrate his intention of fully disclosing all information during the interview process.

With respect to the Government's assertion that Petitioner failed to disclose his service in the Bosnian military, Petitioner asserts that the INS officer never asked him about foreign military service during his November 2000 interview and that the question on the Form N-400 did not specifically ask about foreign military service. Opp'n at 10, 12-14. Further, because Petitioner maintains that he provided truthful testimony both in writing andd during the interviews, he disputes the Government's assertion that his testimony that he has never given false information to a government official also amounted to false testimony. Opp'n at 11-12. Finally, Petitioner argues that conduct outside the statutory period is not relevant to the issue of whether he gave false testimony during the statutory period.

The Court has carefully considered the parties' arguments and the evidence in the administrative record that they have proffered in support. As the foregoing discussion illustrates, while the Government contends that the evidence indisputably establishes that Petitioner gave false testimony regarding the weaponry he carried in Bosnia and regarding his service in the Bosnian military, Petitioner has proffered evidence creating triable issues of fact on the issues of whether his testimony was, in fact, false and whether he made any statement with the intent to deceive the

government to obtain an immigration benefit.  In particular, the Court disagrees with the Government's argument that the Court can simply infer Petitioner's subjective intent from the record.  Instead, questions regarding Petitioner's testimony and intent, and the ultimate issue of whether Petitioner possessed good moral character during the three year period preceding his N-400 Application, are not amenable to resolution on summary judgment.  *See Navarette v. Holder*, 2010 WL 161141, at *4 (E.D. Cal. April 20, 2010) (denying cross-motions for summary judgment on the ground that question of good moral character is fact-based and cannot be resolved as a matter of law on summary judgment).  Further, accepting the Government's argument that the Court may properly rule on the present record would be inconsistent with the Court's obligation to conduct a *de novo* review and make its own findings of fact and conclusions of law.  Accordingly, the Court **DENIES** the Government's Motion for Summary Judgement.

## V.   CONCLUSION

Because genuine issues of material fact exist as to Petitioner's good moral character, the Court **DENIES** the Government's Motion for Summary Judgment.  By separate order, the Court sets this matter for trial.

**IT IS SO ORDERED.**

Dated: May 27, 2011

_____
Maria-Elena James
Chief United States Magistrate Judge