1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

# UNITED STATES  DISTRICT COURT

## Northern District of California

MIRSAD HAJRO,                                          No. C 10-1772 MEJ

             Petitioner/Plaintiff,          **FINDINGS OF FACT AND**
   v.                                               **CONCLUSIONS OF LAW**
                                                        **FOLLOWING BENCH TRIAL**
ROBIN BARRETT, San Francisco Field
Office Director; United States Citizenship and
Immigration Services,

             Defendants.
_____/

## I.  INTRODUCTION

Plaintiff Mirsad Hajro initiated this action on April 23, 2010, by filing a Petition pursuant to 8 U.S.C. § 1421(c) seeking *de novo* review of the United States Citizenship and Immigration Services' ("USCIS") denial of his Form N-400 Application for Naturalization.  Dkt. No. 1.  On January 12, 2010, USCIS denied Plaintiff's naturalization application on the ground that Plaintiff gave false testimony with the intent to obtain an immigration benefit and consequently lacked the good moral character required for naturalization.  Certified Record of Proceeding ("ROP"), J. Trial Ex. 1 at 1-8. On October 7, 2010, the Government moved for summary judgment on Plaintiff's Petition.  Dkt. No. 14.  The Court subsequently denied the Government's Motion, holding that triable issues of fact existed on the issues of whether Petitioner gave false testimony and whether he made any statement with the intent to deceive the government to obtain an immigration benefit, making summary judgment improper.  Dkt. No. 27.  The Court therefore set this case for a bench trial, which it conducted on November 2, 2011.  Following trial, the Court took this matter under submission and granted the parties leave to submit closing arguments and revised proposed findings of fact and conclusions of law.  Dkt. Nos. 47, 48, 49, 54.  Having carefully considered the testimony at trial, the administrative record, the parties' written arguments, and the controlling legal authorities, the Court

now makes the following findings of fact and conclusions of law and **GRANTS** Plaintiff's Petition.

## II.   FINDINGS OF FACT

**A.      Plaintiff's Background**

1.       Plaintiff was born in January 1975, in Sarajevo, Bosnia and Herzegovina.  ROP 167; Trial Transcript ("Tr.") at 16:15-18, Dkt. No. 56.

2.       Plaintiff is Bosnian and Muslim.  Tr. 16:15-20.

3.       The Bosnian war begin in May 1992.  Tr. 21:10-11.

4.       In May 1992, at the age of 17, Plaintiff became involved in Teritorijalna Odbrana, or Territorial Defense, which conducted civil patrols of neighborhoods during the early stages of the Bosnian war.  Tr. 23:13-24:19, 25:17-19, 32:22-23.

5.       Plaintiff participated in the patrols for approximately two to four months beginning in May 1992.  Tr. 29:1-3, 32:16-17.

6.       The civil patrols were not part of the Bosnian army.  Tr. 24:24-25.

7.       Although some participants in the civil patrols carried weapons, there was no weapon assigned to Plaintiff as part of the civil patrol.  Tr. 26:23-25, 27:1-23.

8.       Plaintiff testified that he did carry his father's pistol during his participation in the Territorial Defense patrols, which was shared with other members of the patrol.  Tr. 28:7-12.

9.       During the latter part of his participation in the civil patrols, Plaintiff carried an AK-47 that belonged to other participants in the patrol.  Tr. 30:12-31:5.  Plaintiff testified that he carried the weapon on a "couple of occasions," for periods of ten to thirty minutes.  Tr. 31:1-5. Plaintiff never fired the AK-47 and did not receive training on use of the weapon.  Tr. 31:6-9.

10.      In September 1994, Plaintiff was drafted to serve in the Bosnian army.  Tr. 33:14-18, 34:24-25.

11.      Plaintiff was assigned to the communications branch of the Bosnian army.  Tr. 33:24-34:3.

12.      Plaintiff underwent training for approximately five to seven weeks.  Tr. 33:19-34:8.

13.      Plaintiff did not receive any weapons training.  Tr. 34:17-18.

14.      Plaintiff was assigned the position of a clerk typist.  Tr. 37:5-9.  In this capacity, he was not

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1    assigned a weapon and did not carry a weapon.  Tr. 38:7-10.

2  15.  Plaintiff's service in the Bosnian army ended in December 1995.  Tr. 35:1-3.

3  16.  Prior to his arrival in the United States, Plaintiff spoke limited English.  Tr. 20:7-24, 43:16-

4       17, 44:3-10.

5  17.  Plaintiff met his wife, Jennifer A. Gilbert (now, Jennifer Hajro), who is an American citizen,

6       at some point in 1996 or 1997, while he was attending the University of Saarland in

7       Saarbrucken, Germany.  Tr. 43:3-23.

8  18.  In June 1999, Plaintiff applied for a K-1 Nonimmigrant Fiancé Visa.  ROP 168.

9  19.  The K-1 Visa was issued on August 10, 1999.  ROP 168.

10 20.  On September 7, 1999, Plaintiff entered the United States as the K-1 fiancé of Jennifer

11      Gilbert.  Tr. 45:23-25, 45:9-25; ROP 126, 168.

12 21.  On November 2, 1999, Plaintiff married Jennifer Gilbert.  ROP 130.

13 22.  After Plaintiff came to the United States, he enrolled in adult English language classes.  Tr.

14      46:18-23, 48:18-23, 49:1-18.

15 23.  In 2000, Plaintiff enrolled in Bosie State University.  Tr. 50:15-16.  Among the courses

16      Plaintiff took were an English 101/composition course and a communications course.  Tr.

17      50:15-51:18.

18 24.  In May 2006, Plaintiff earned a degree in electrical engineering from Bosie State University.

19      Tr. 51:23-52:52:3.

20

21 **B.    Plaintiff's November 1999 Form I-485 Application and Interview**

22 25.  In October 1999, with some assistance of a co-worker, Plaintiff completed a Form I-485

23      Application to Register Permanent Residence or Adjust Status ("Form I-485 Application"),

24      seeking to change his status to that of a permanent lawful resident.  ROP 126-129; Tr. 55:4-

25      18.  Plaintiff signed the Form I-485 Application on October 11, 1999, and filed it on

26      November 1, 1999.  ROP 126; Tr. 56:1-8.

27 26.  Part 3 of the Form I-485 Application addresses "Processing Information."  ROP 127.

28

                                          3

Question C under Part 3 asks the applicant to:

List your present and past membership in or affiliation with every political organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place since your 16th birthday.  Include any foreign military service in this part.  If none, write "none".  Include the name of the organization, location, dates of membership from and to, and the nature of the organization.

ROP 127.

27.   In response to the question 3.C, Plaintiff wrote "None."  ROP 127.

28.   Plaintiff credibly testified that he was not attempting to hide his service in the Bosnian Army or deceive the Government by answering "none" to question 3.C.  Tr. 58:18-59:10.  Rather, Plaintiff credibly testified that he interpreted question 3.C of the Form I-485 Application's reference to "foreign military service," as asking if he had ever served in the United States Army outside the United States.  Tr. 57:23-58:14.  Plaintiff testified that this was an incorrect interpretation of the question.  Tr. 58:15-17.

29.   On November 13, 2000, Marie Atkinson, an Immigration and Naturalization Services[1] adjudications officer, interviewed Plaintiff and his wife regarding the Form I-485 Application.  ROP 126-29; Tr. 59:11-23.

30.   Plaintiff credibly testified that during the November 13, 2000 interview, Ms. Atkinson did not ask if he had been in any foreign military service or in the Bosnian military.  Tr. 60:9-14.

31.   Jennifer Hajro also credibly testified that she did not recall the INS officer asking about Plaintiff's foreign military service during the interview.  Tr. 134:17-19, 135:8-9.

32.   As discussed below, another former adjudications officer (Amber Shrestha) testified that it was standard practice for adjudications officers to make tick marks in red ink next to

---

[1]   Under the Homeland Security Act, the INS, which was a division of the Department of Justice, was abolished as of March 1, 2003.  6 U.S.C. § 291(a).  Many of the INS's functions, including the adjudication of adjustment of status applications, were then transferred to USCIS, a division of the newly-created Department of Homeland Security.  6 U.S.C. § 271(b).

4

1   questions on adjustment of status applications to denote that the officer asked the question.

2   Tr. 156:11-13.

3   33.   Reviewing Ms. Atkinson's notations on Plaintiff's I-485 Application, there is no tick mark

4        next to question 3.C indicating that Ms. Atkinson asked the question during the interview.

5        ROP 127.

6   34.   On November 13, 2000, INS approved Plaintiff's Form I-485 Application and he became a

7        lawful permanent resident.  ROP at 126.

8

9   **C.    Plaintiff's 2003 N-4000 Application for Naturalization and Interview**

10  35.   On November 6, 2003, Plaintiff filed an N-400 Application for Naturalization ("the 2003

11       N-400 Application" or "first N-400 Application") with USCIS.  ROP 102-111; Tr. 62:13-

12       63:9.

13  36.   Plaintiff testified that because he was in school and working part time, his wife completed the

14       N-400 Application for him.  Tr. 63:13-64:25, 65:3-7, 135:16-136:4.

15  37.   Part 10 of the N-400 Application sets forth "Additional Questions," with subpart B addressing

16       "Affiliations."  ROP 108.  Subpart B, question 8a asks:

17       Have you **EVER** been a member of or associated with any organization, association,
         fund, foundation, party, club, society, or similar group in the United States or any
18       other place?

19       ROP 108.

20  38.   The Application then contains a blank chart for the applicant to list the "Name of Group."

21       ROP 108.

22  39.   On Plaintiff's 2003 N-400 Application, the "no" box was checked in response to question 8a.

23       ROP 108; Tr. 24-25.

24  40.   Under the "Name of Group," "N/A" was written.  ROP 108; Tr. 67:1-3.

25  41.   Part 10, subpart D of the N-400 Application is entitled "Good Moral Character."  ROP 109.

26       Question 23 under subpart D reads:

27       Have you **EVER** given false or misleading information to any U.S. governmental
         official while applying for any immigration benefit or to prevent deportation,
28

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1    exclusion, or removal?

2    ROP 109.

3  42.  On Plaintiff's 2003 N-400 Application, in response to question 23, the "no" box was checked.

4    ROP 109; Tr. 68:20-69:7.

5  43.  Question 24 under subpart D states:

6    Have you **EVER** lied to any U.S. governmental official to gain entry or admission into
     the United States?

7

8    ROP. 109.

9  44.  On Plaintiff's 2003 N-400 Application, in response to question 24, the "no" box was checked.

10    ROP 109; Tr. 68:20-69:7.

11  45.  Part 6 of the N-400 Application is entitled, "Information About Your Residence and

12    Employment." ROP 104. Question B under Part 6 reads:

13    Where have you worked (or, if you were a student, what schools did you attend)
      during the last 5 years? Include military service. Begin with your current or latest

14    employer and then list every place you have worked or studied for the last 5 years. If
      you need more space, use a separate sheet of paper.

15

16    ROP 104.

17  46.  In response to question B under Part 6, Plaintiff indicated that he was a student at Bosie State

18    University, University of Saarland, and University of Sarajevo and listed the relevant dates he

19    attended those schools. ROP 104.

20  47.  Plaintiff testified that he did not list his service in the Bosnian military in response to question

21    6.B because it was outside of the five-year period addressed by question B. Tr. 66:3-13.

22  48.  On March 4, 2004, a USCIS officer interviewed Plaintiff on his 2003 Form N-400

23    Application. ROP 102.

24  49.  During the interview, Plaintiff orally amended his "no" response to Part 10, subpart B,

25    question 8a, by stating that he was a member of the "Power Engineering Club, BSU." ROP

26    108.

27  50.  At trial, Plaintiff testified that the amendment was necessary because after he filed the

28

6

1    Application in November 2003, he joined that club.  Tr. 67:15-21.

2    51.    Based on the immigration officer's tick marks, Plaintiff orally affirmed his "no" responses to

3           questions 23 and 24 during the interview.  ROP 109.

4

5    **D.     September 26, 2007 Interview on 2003 Form N-400 Application**

6    52.    On September 26, 2007, USCIS interviewed Plaintiff a second time on his 2003 N-400

7           Application.  ROP 100; Tr. 73:11-14.

8    53.    The interview was transcribed in a Record of Sworn Statement in Administration

9           Proceedings, which Plaintiff reviewed and signed on September 26, 2007.  ROP 112-21.

10   54.    During this interview, the USCIS officer asked Plaintiff whether he served in the military

11          during the Bosnian war.  ROP 114.  Plaintiff indicated that he had been drafted into the

12          Bosnian Army during the Bosnian war in 1994 or 1995.  ROP 114.

13   55.    The immigration officer also asked Plaintiff whether he served in any territorial defense units

14          before joining the army.  ROP 114.  Plaintiff responded, "Yes, but not because I want to,

15          because I had to.  We had to patrol the streets.  I was a kid at that time, 17."  ROP 114.

16          Plaintiff testified that the units patrolled his neighborhood in Visoko.  ROP 114.

17   56.    When asked about the length of time the units patrolled, Plaintiff estimated that it was a

18          period of three to five months, but indicated that he was unsure because over fifteen years had

19          passed.  ROP 114-15.

20   57.    The immigration officer also asked Plaintiff if he was armed while patrolling.  ROP 115.

21          Plaintiff responded:

22          No just one pistol for the three of us.  Some of them didn't have anything.  It was just
            the neighborhood patrolling.  There was no need, the neighborhood was good.  We
23          didn't have any kind of fear that we would be attacked.

24          ROP 115.

25   58.    Plaintiff did not mention that he carried or was armed with any other weapons at this time.  At

26          trial, Plaintiff credibly testified that he did not mention that he carried an AK-47 on a few

27          occasions because he did not recall carrying one at the time of the interview.  TR. 75:18-76:4.

28

7

UNITED STATES DISTRICT COURT
For the Northern District of California

59. During the interview, Plaintiff disclosed that he engages in the Islamic practice of interacting with and encouraging other Muslims to be good examples, known as Tablighi Jamaat.  ROP 117-18.

**E.     USCIS's Denial of Plaintiff's 2003 N-400 Application**

60. On October 9, 2007, USCIS denied Plaintiff's 2003 N-400 Application.  ROP 100-01.

61. In its Form N-335 explanation of its decision, USCIS stated in relevant part:

On November 6, 2003, you applied for naturalization under Section 319(a) of the Immigration and Nationality Act, as amended, herein the Act.  On March 4, 2004 and September 26, 2007, you were interviewed by an officer of the Citizenship and Immigration Services, herein the Service, to determine your eligibility for naturalization.  You were questioned under oath by the interviewing officer about your answers provided on your N-400 Application.  You were also question about your service during the war in Bosnia, and you testified to the following: that you served in the army for about six months; that you were drafted in September 1994, and had your training in Zenica; that you had to patrol the streets in your neighborhood; that you got sick during training so they put you in the 16th division as a clerk; that your duties involve typing letters from the commanders and taking them to communications for encryption.

A review of your record reveals, however, that on November 13, 2000, you were interviewed by an officer of the Service regarding your Form I-485 Application to Register Permanent Residence or Adjust Status.  During that interview, you were questioned under oath by the interviewing officer about your answers provided on your I-485 Application, Part 3.C, Foreign Military Service.  You indicated that you had no foreign military service.  Clearly this record indicates that your testimony was not truthful and failed to reveal an accurate image of your past activities in your home country.

[. . . .]

You failed to provide truthful testimony about your foreign military service.  By not admitting to serving in the military service in Central Bosnia during the war, this material omission cut off a highly relevant line of questioning that directly related to your admissibility to the United States as a lawful permanent resident.  This material misrepresentation occurred during the required time period needed to show good moral character for your naturalization eligibility.  Therefore the Service cannot make a determination that your are a person of good moral character, as required under Section 316(a) of the Act and 8 CFR 316.10(b)(2).

Inasmuch as you have failed to establish that you are a person of good moral character, your application must be denied and hereby is denied.  [. . . .]

ROP at 100-101.

8

UNITED STATES DISTRICT COURT
For the Northern District of California

**F.     Plaintiff's Appeal of Denial of 2003 N-400 Application**

62.     On November 7, 2007, Plaintiff appealed the denial of his 2003 N-400 Application by filing a Form N-336 request for Hearing on Decision in Naturalization Proceedings.  ROP 70-99.

63.     On October 16, 2008, USCIS held a hearing on the appeal.  ROP 76-83.

64.     At the hearing, Plaintiff testified that he carried an AK-47, in addition to a pistol, during his territorial defense patrols.  ROP 31, 78; Tr. 75:18-20.

65.     At trial, Plaintiff credibly testified that he did not previously mention that he had carried an AK-47 because he did not remember doing so before that time.  Tr. 75:18-76:1.  He also credibly testified that he was not attempting to hide that fact from the government, but rather voluntarily disclosed that fact to enable USCIS to "make the right decision."  Tr. 75:21-76:6; 87:17-22.

66.     At the October 16, 2008 hearing, when asked why he wrote "None" in response to question 3.C of his Form I-485 Application for adjustment of status, Plaintiff testified "I understood it meant 'U.S. military service in foreign country."  Ex. 6, ROP 81.

67.     At the hearing, Plaintiff also testified that he was a member of or associated with the handball team at Boise State, the Muslim Student Association at Boise, and the Richmond Mosque.  ROP 82.

68.     On November 26, 2008, USCIS affirmed the denial of Plaintiff's 2003 N-400 Application.  ROP 65-69.

**G.     Plaintiff's 2007 Form N-400 Application**

69.     On November 29, 2007, Plaintiff filed a second N-400 Application for Naturalization (the "2007 N-400 Application" or "second N-400 Application").  ROP 36-46.

70.     In response to Part 10, subpart B, question 8a regarding "Affiliations," Plaintiff indicated that he was a member of or associated with "Boise State Team Handball Club," "Institute of Electrical and Electronics Engineers," and the "Islamic Center of Boise, Idaho."  ROP 42; Tr. 92:13-22.

71. On his 2007 N-400 application, in response to Part 10, subpart D, question 23, asking whether Plaintiff had ever given false or misleading testimony to a U.S. government official while applying for any immigration benefit, Plaintiff checked the "no" box.  ROP 43.

72. On his 2007 N-400 application, in response to Part 10, subpart D, question 24, asking whether Plaintiff had ever lied to any U.S. governmental official to gain entry or admission into the United States, Plaintiff checked the "no" box.  ROP 43.

**H.      January 13, 2009 Interview on 2007 Form N-400 Application**

73. On January 13, 2009, a USCIS officer interviewed Plaintiff on his 2007 Form N-400 application.  ROP 47-54; Ex. 8.

74. When asked why he testified  at his September 26, 2007 interview that during his Territorial Defense patrols he carried "just one pistol for three of us," but at his appeal hearing on October 16, 2008, he stated that he shared a pistol in the beginning and later he carried an AK-47, Plaintiff testified:

> There is no reason behind it.  I just cannot recall.  I am trying to answer truthfully but I do not remember clearly all details.  I think I may have carried an AK-47 sometimes, but I am not 100% sure.  It was a long time ago.

ROP 53.

75. During the interview, Plaintiff orally amended his response to his 2007 Form N-400 naturalization application Part 10, subpart B, question 8a, by stating that in addition to the groups he had previously listed, he was a member of or associated with the "Local Union Electrical Engineers," "Bosnian Army," "Territorial Defense," and "Power Engineering Club/IEEE."  ROP 42; Ex. 5; Tr. 92:23-93:18.

76. On January 13, 2009, Plaintiff also submitted a Record of Sworn Statement in addition to his 2007 Form N-400 Application, stating under oath:

> I did not intend to mislead the Immigration Service but I was found by the Service to have committed false testimony in 2000 and 2004 for failing to disclose my military service in Bosnia.

ROP. 22.  Plaintiff testified that the Statement was written by his lawyer after Plaintiff

10

1    discovered that information on the Form N-400 Applications was incorrect.  Tr. 96:15-21.

2    The Statement replaced the Addendum that was attached to the 2007 Form N-400

3    Application.  ROP 46; Tr. 96:22-97:19.

4

**I.     USCIS's Denial of Plaintiff's 2007 Form N-400 Application**

77.    On March 31, 2009, USCIS denied Plaintiff's 2007 N-400 Application.  ROP 31-35.  In its

decision, USCIS found that Plaintiff provided "mutually incompatible" testimony on

September 26, 2007 and October 16, 2008 regarding the weaponry he carried during his

activities in the Bosnian war and that he provided the testimony with the subjective intent to

cover up or divert attention away from conduct he thought might jeopardize his entitlement to

naturalize.  ROP 33.

78.    USCIS further found that Plaintiff had engaged in a pattern and practice of providing false

testimony in order to obtain immigration benefits based on his alleged failure to disclose his

service in the Bosnian military on his Form I-485 Application and during prior interviews

with USCIS.  ROP 33-34.

79.    USCIS thus concluded that Plaintiff's "pattern and practice of providing false testimony in

order to obtain immigration benefits precludes [Plaintiff] from establishing the good moral

character required for naturalization."  ROP 35.

**J.     Plaintiff's Appeal from Denial of 2007 Form N-400 Application**

80.    On April 22, 2009, Plaintiff filed a Form N-336 Request for Hearing on Decision in

Naturalization Proceedings, appealing the denial of his 2007 N-400 Application.  *See* ROP 1.

81.    In 2009, Amber Shrestha was a senior adjudications officer with USCIS in San Francisco.  Tr.

153:5-154:1.

82.    Ms. Shrestha interviewed Plaintiff on his appeal from the denial of his 2007 N-400

Application on October 22, 2009.  ROP 1; Tr. 157:14-19, 159:5-7.

83.    Ms. Shrestha testified that she questioned Plaintiff about his testimony in support of his Form

I-485 adjustment of status application.  Tr. 162:1-3.  Specifically, Ms. Shrestha asked Plaintiff about his response of "None," to question 3.C about his former affiliation with clubs, groups, societies, and foreign military service.  Tr. 162:4-11.

84.   Ms. Shrestha testified that Plaintiff indicated he did not specifically recall whether he was asked that question during his interview on the Form I-485 Application and that he would have interpreted that as asking of he had served in the U.S. military outside of the United States.  Tr. 16222-163:3.  Ms. Shrestha testified that she did not find this explanation credible because Plaintiff did not present any credible evidence supporting his interpretation.  Tr. 163:4-11.

85.   She testified that his response of "None," was at issue because he had not disclosed that he served in the Bosnian military or the Territorial Defense group during his adjustment of status interview, thereby cutting off that line of question during the adjustment of status interview, but he later disclosed this during an interview on his N-400 Application.  Tr. 163:12-164:4.

86.   During the hearing, Ms. Shrestha asked Plaintiff to explain the difference between his statements that he was carrying a pistol and an AK-47.  ROP 22.  As reflected in Ms. Shrestha's record of Plaintiff's response, which Plaintiff reviewed and signed, Plaintiff responded:

I carried pistol more.  I did handle an AK once or twice.  Initially when I was asked, I did not remember.  I was not trying to hide anything.  If I had something to hide, I wouldn't say it.  I was teenager with no arm assigned to me.

ROP 22.

87.   Ms. Shrestha also asked why there were contradictions between his March 4, 2004 interview on his 2003 N-400 Application, where he stated he was a member of or associated with the "Power Engineering Club, BSU," but later added the Territorial Defense.  ROP 22.  As recorded in Ms. Shrestha's notes, Plaintiff testified:

As I said, military and territorial defense – I did not consider an organization since they were (governmental – Bosnian army) and exercising force (territorial defense).  Power Engineering Club = No membership card or dues but we met weekly and bi-weekly.  I hid nothing - territorial defense is not private organization.

UNITED STATES DISTRICT COURT
For the Northern District of California

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1    ROP 22.

2  88.   During the appeal hearing, Ms. Shrestha also asked Plaintiff about why he did not list his

3    involvement in the Bosnian Army and Territorial Defense on his first N-400 Application in

4    response to question 8a in Part 10.B regarding affiliations or identify them during his

5    naturalization interview on March 3, 2004.   ROP 3.  Plaintiff gave the following explanation:

6    [I]n my personal opinion, the Territorial Defense exercises force and it's in a war time.
     So I don't, personally, I don't consider it a club or organization whereas [an]
7    organization or a club is a private [institution], usually organized for wellbeing or
     welfare of society, not like killing or shooting guns.  Same like army is a
8    governmental body; it's not [a] private institution.  It has a force; it has a power.  But
     maybe my understanding is incorrect.  And when asked about my participation in
9    Territorial Defense, I clearly explained that I was involved and there is no reason for
     me to hide it.

10

11    ROP 3.

12  89.   Ms. Shrestha further asked Plaintiff about his previous testimony on September 26, 2007, that

13    he had carried a pistol during the Territorial Defense period and his subsequent testimony on

14    October 16, 2008 that he had carried an AK-47.  ROP 3.  In response, Plaintiff testified as

15    follows:

16    On a couple of occasions I carried [the AK-47]  Initially when I was asked, I did not
     remember, but I brought this up myself because I am honest and I'm not trying to hide
17    anything.  If I wanted to hide anything, I didn't have to say it.

18    ROP 3.

19  90.   Plaintiff further explained:

20    I didn't clarify myself what does it mean 'carry', I was not assigned a gun, I was not a
     soldier, and carrying basically means I was holding it for half hour, an hour, I didn't
21    have a uniform, I was not involved in a combat, I was carrying [the AK] on a couple
     occasions . . .  During the initial stage of the Territorial Defense, there were few arms
22    available and then towards the end there [were] more arms available.  So it took me a
     while to understand, to retain, to remember, actually, what was going on during the
23    war time.

24    ROP 3.

25  91.   As reflected in Ms. Shrestha's notes, with respect to his carrying an AK-47, Plaintiff also

26    testified during the hearing:

27    I carried AK 47 towards end of T.O. period, but only a couple of times and only
     briefly.  Never assigned to me.  Just handed to me by older, more experienced T.O.

28

13

**United States District Court**
**For the Northern District of California**

1    persons.

2    ROP 20.

3  92.   Ms. Shrestha also asked Plaintiff about his "No" response to question 24 on his N-400

4    Application about whether he had ever lied to any U.S. government official to gain entry or

5    admission to the United States.. ROP 24. Plaintiff responded: "According to USCIS I did lie,

6    but my personal opinion was that I never lied. I always answered specifically when asked

7    specifically and I had no reason to lie." ROP 24.

8  93.   Similarly, Ms. Shrestha questioned Plaintiff about his "No" response to question 23, which

9    asked whether he gave false or misleading information to any U.S. government official while

10    applying for any immigration benefit. ROP 24. Plaintiff responded:

11    According to USCIS I did, but I don't think so. I was never specifically asked. When
      specifically asked, I would answer truthfully and honestly. I would not intentionally
12    fail to give whole truth but I unintentionally misunderstood questions that were broad.
      I am coming from different culture, not native language. It was not intentional to
13    mislead the government, it was because of my misunderstanding of culture language
      and how I interpreted the broad question. Rather than specific questions.
14

15    ROP 24.

16

17  **K.    USCIS January 12, 2010 Decision Affirming Denial of 2007 Form N-400 Application**

18  94.   On January 12, 2010, USCIS issued its decision affirming the denial of Plaintiff's 2007 N-400

19    Application. ROP 1-8. Specifically, after reviewing Plaintiff's responses, USCIS concluded:

20    The evidence establishes a pattern and practice on your behalf of providing false
      testimony to obtain immigration benefits. Your false testimony on November 13,
21    2000, (that you had never been a member of any political organization, association,
      fund, foundation, party, club, society, or military organization) was made, at least in
22    part, with the subjective intent of obtaining lawful permanent resident status, a benefit
      under the immigration laws. Your false testimony on March 4, 2004, (that you had
23    never been a member of any organization or group, besides the Power Engineering
      Club at BSU) was made, at least in part, with the subjective intent of obtaining
24    naturalization, a benefit under the immigration laws. The fact that you served in the a
      [sic] territorial defense group and the Bosnian military, could have led to further
25    investigation into your admissibility or to your eligibility for naturalization on March
      4, 2004. Accordingly, USCIS finds that you purposely provided false testimony
26    regarding your service in the territorial defense group and the Bosnian military to
      obtain your naturalization and to conform your 2004 testimony to that offered in 2000,
27    so as not to alert the government to a possible disqualifying factor or to open up an
      avenue of inquiry which could jeopardize either your attainment of permanent
28

14

UNITED STATES DISTRICT COURT
For the Northern District of California

residence of your eligibility for naturalization. Further, your testimony on September 26, 2007, about the types of arms you carried during the territorial defense period, was made, at least in part, with the subjective intent of obtaining naturalization. Furthermore, USCIS finds that your statement on January 13, 2009, (that you were not sure if you carried an AK-47) was further misleading information made with the attempt to conform your 2007 testimony to your 2008 testimony. Finally, USCIS finds that the testimony you gave on March 4, 2004, January 13, 2009, and October 22, 2009, that you had never intentionally provided false information to a U.S. government official when applying for an immigration benefit, was also false testimony made for the purpose of gaining your naturalization.

Your false testimony on March 4, 2004, and on November 13, 2000, occurred outside the statutory period required for good moral character in this case. However, in deciding upon applications for naturalization, USCIS is not limited to an applicant's conduct during the five years immediately preceding the filing of the application, but may take into consideration events that occurred before the designated period as a basis for its determination. INA § 316(e), 8 U.S.C. § 1427(e); 8 C.F.R. § 316.10(2). USCIS thus concludes that, based on your pattern and practice of providing false testimony to obtain immigration benefits on November 13, 2000, March 4, 2004, September 26, 2007, January 13, 2009, and October 22, 2009, you lack the good moral character required for naturalization pursuant to Section 319(a) of the Act, 8 C.F.R. § 319.1(a)(7), and 8 C.F.R. § 316.10(b)(2)(vi).

[ . . . . ]

USCIS therefore concludes that you have failed to establish that you are eligible for naturalization under Section 319(a). You have failed to demonstrate good moral character, by reason of having testified falsely within the three-year statutory period preceding the filing of your currently pending N-400 application for naturalization. Further, your pattern and practice of providing false and misleading testimony in order to obtain immigration benefits precludes you from establishing the good moral character required for naturalization.

It is determined that you have not sufficiently overcome the reasons for the denial of your application for naturalization, and your application remains denied.

ROP 7-8.

95.    Ms. Shrestha testified that she drafted the January 12, 2010 decision, which was ultimately signed by her supervisor, Richard Valieka, who was the San Francisco field office director. ROP 1-8; Tr. 160:12-16, 161:4-9.

96.    Ms. Shrestha did not include any discussion of Tablighi Jamaat in the final decision. Tr. 158:18-20.

**K.    Tablighi Jamaat**

97.    At trial, Plaintiff credibly testified that Tablighi Jamaat, or the effort of Tabligh, is an Islamic

UNITED STATES DISTRICT COURT
For the Northern District of California

1   religious practice that Muslims are expected to partake in as a duty of their Islamic faith.  Tr.

2   77:12-78:10.

3   98.  Plaintiff testified that Tablighi Jamaat involves talking with other Muslims about their shared

4        faith and practices and sometimes involves traveling to other communities.  Tr. 78:13-79:21.

5   99.  Plaintiff testified that he practices Tablighi Jamaat.  Tr. 78:11-12.

6   100.  While practicing Tablighi Jamaat, Plaintiff traveled to India, Bangladesh, Germany, Bosnia,

7        Canada, and throughout the United States.  Tr. 79:22-80:1, 116:20-25.

8   101.  Plaintiff testified that, while there are spiritual leaders in India who are scholars of Tablighi

9        Jamaat, the practice does not have an organizational structure.  Tr. 83:8-84:7.

10  102.  Plaintiff credibly and convincingly testified that he did not list Tablighi Jamaat on his Form

11        N-400 Applications in response to his membership or involvement in organizations or

12        associations because he believed that it is a religious practice, not an organization or

13        association.  Tr. 85:10-25.

14  103.  Plaintiff disclosed his practice of Tablighi Jamaat during the interviews on the Form N-400

15        Applications.  Tr. 85:10-23.

16

17  **L.     Evidence Regarding USCIS Interview Procedures and Recordkeeping**

18  104.  Ms. Shrestha testified about the process for adjudicating adjustment of status applications,

19        which consisted of reviewing the application, calling the applicant in for an interview,

20        questioning the applicant about the application, determining whether the applicant is eligible,

21        and making a decision on the application.  Tr. 154:19-24.

22  105.  Ms. Shrestha testified that, in her experience, when conducting an adjudications interview of

23        an adjustment application, she would not necessarily ask the applicant all of the questions in

24        the application, but would just ask the most pertinent questions.  Tr. 155:4-7, 156:6-10.  She

25        testified that she would indicate which questions she asked by putting a red tick mark next to

26        the question that was asked.  Tr. 156:11-13.

27  106.  Ms. Shrestha testified that her process for adjudicating naturalization applications was

28

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1   essentially the same as her process for adjudicating adjustment of status applications.  Tr.

2   156:17-23.

### III.  CONCLUSIONS OF LAW

**A.    Legal Standards**

1.   Pursuant to 8 U.S.C. § 1421(c), this Court is authorized to conduct a de novo review of

     Plaintiff's 2007 N-400 Application.  Specifically, § 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a
> hearing before an immigration officer under section 1447(a) of this Title, may seek
> review of such denial before the United States district court for the district in which
> such person resides in accordance with chapter 7 of Title 5.  Such review shall be de
> novo, and the court shall make its own findings of fact and conclusions of law and
> shall, at the request of the petitioner, conduct a hearing de novo on the application.

2.   "Accordingly, even if [USCIS] is allowed to make the initial decision on a naturalization

     application, the district court has the final word and does not defer to any of [USCIS's]

     findings or conclusions."  *United States v. Hovsepian ("Hovsepian I")*, 359 F.3d 1144, 1162

     (9th Cir. 2004).

3.   In order to be naturalized, an applicant bears the burden of establishing each of the statutory

     requirements by a preponderance of the evidence.  *Hovsepian I*, 359 F.3d at 1168 (citing 8

     C.F.R. § 316.2(b)).

4.   To establish eligibility for naturalization, Plaintiff must demonstrate that he meets the

     requirements set forth at 8 U.S.C. § 1430(a), which applies to persons whose spouses are

     United States citizens.  Section 1430(a) provides that Plaintiff must satisfy all the

     requirements of 8 U.S.C. § 1427(a), except paragraph (a)(1) of that section.

5.   In this matter, the only statutory requirement in dispute is whether Plaintiff sufficiently

     established that he was a person of good moral character during the relevant three-year

     residency period.  8 U.S.C. §§ 1427(a)(3), 1430(a); 8 C.F.R. §§ 316.2(a)(7), 319(a)(7).

6.   Thus, Plaintiff is responsible for proving that he has been and is a person "of good moral

     character, attached to the principles of the United States, and favorably disposed toward the

17

1    good order and happiness of the United States." *Hovsepian I*, 359 F.3d at 1168 (citing 8

2    U.S.C. § 1427(a)(3); 8 C.F.R. § 316.2(a)(7)).

3    7.    The Ninth Circuit has held that the issue of whether an applicant possesses good moral

4          character as required under 8 U.S.C. § 1427(a)(3) is a factual determination. *United States v.*

5          *Hovsepian ("Hovsepian II")*, 422 F.3d 883, 885 (9th Cir. 2005) (*en banc*) (citing *Yuen Jung v.*

6          *Barber*, 184 F.2d 491, 497 (9th Cir. 1950)).

7    8.    Although the Immigration and Naturalization Act does not define "good moral character," it

8          does enumerate nine circumstances which preclude such a finding.  8 U.S.C. § 1101(f).

9    9.    In particular, 8 U.S.C. § 1101(f)(6) states that "one who has given false testimony for the

10         purpose of obtaining any benefits under this chapter" cannot be found to have the good moral

11         character required for naturalization. *See Kungys v. United States*, 485 U.S. 759, 779 (1988).

12   10.   As the Supreme Court explained, § 1101(f)(6) "denominates a person to be of bad moral

13         character on account of having given false testimony if he has told even the most immaterial

14         of lies with the subjective intent of obtaining immigration or naturalization benefits." *Kungys*,

15         485 U.S. at 779-80.  Thus, the focus is on the applicant's intent when making the allegedly

16         false statements, rather than on the materiality of the statements. *Id*. at 780.

17   11.   "Testimony" for purposes of 8 U.S.C. § 1101(f)(6) must be oral statements made under oath;

18         "it does not include other types of misrepresentations or concealments, such as falsified

19         documents or statements not made under oath." *Id.* at 780.

20   12.   In order to constitute false testimony, a statement must be intentionally made with the subject

21         intent to obtain an immigration benefit. *Id.*

22   13.   The Ninth Circuit has recognized that, "[w]hether a person has the subjective intent to deceive

23         in order to obtain immigration benefits is a question of fact." *Hovsepian II*, 422 F.3d at

24         887–88 (citing *Kungys*, 485 U.S. at 782).

25

26   **B.    Analysis**

27   The central issue in this case is whether Plaintiff has met his burden of establishing each of

28

18

1   the statutory requirements for naturalization by a preponderance of the evidence.  The sole

2   requirement in dispute is whether Plaintiff has sufficiently demonstrated that he was a person of good

3   moral character during the three years preceding his 2007 N-400 Application.  The Government

4   asserts that Plaintiff cannot be regarded as a person of good moral character for naturalization

5   purposes because he gave false testimony at least in part for the purpose of obtaining an immigration

6   benefit and has demonstrated a pattern and practice of providing false testimony throughout the

7   naturalization process.  Defs.' Closing Statement, Dkt. No. 48 at 2.  It therefore maintains that it

8   properly denied Plaintiff's naturalization application and argues that the record evidence in this case,

9   along with Plaintiff's testimony at trial, should compel the Court to reach the same determination.

10      Plaintiff, however, maintains that he satisfied all of the criteria required for naturalization,

11   including the good moral character requirement.  Pl.'s Closing Statement, Dkt. No. 49 at 10.  He

12   argues that the government had no basis to find that he provided false testimony at any point during

13   the relevant period – or at any point beforehand – and thus had no basis to deny his N-400

14   Application.

15      After thoroughly reviewing the Record of Proceedings and carefully considering the evidence

16   adduced during the hearing, the Court agrees with Plaintiff.

17      The Government first argues that when Plaintiff failed to disclose his service in the Bosnian

18   army and the Territorial Defense in response to question 3.C of the Form I-485 Application, he did so

19   with the subjective intent to deceive the Government in order to obtain immigration benefits.  The

20   Government asserts that because question 3.C expressly asks for foreign military service, Plaintiff

21   was obligated to disclose his Bosnian military service and his explanation that he misunderstood the

22   question is not credible.  Instead, the Government asserts that Plaintiff intentionally withheld

23   information about his military service to avoid questioning about his activities in the Bosnian war

24   which could provide a basis for disqualification for naturalization.

25      The Court disagrees.  The evidence adduced at trial demonstrated that at the time Plaintiff

26   completed the Form I-485 Application, he had limited English language skills and interpreted the

27   question as asking for service in the United States military abroad.  It was this mistaken interpretation

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

of "foreign military service" that formed the basis of Plaintiff's response to question 3.C. The Court finds Plaintiff's explanation reasonable and also finds no evidence that his failure to disclose his involvement in the Bosnian military and Territorial Defense was motivated by a intent to deceive the Government so that his adjustment of status application would be approved.

In the same vein, the Government charges that during the November 13, 2000 interview on his Form I-485 Application, Rose Marie Atkinson, the immigration officer who conducted the interview, asked question 3.C to Plaintiff – in its entirety – and Plaintiff orally affirmed his response of "None," thereby giving false testimony with the intent to obtain an immigration benefit. The record evidence, however, falls short of establishing this fact. The only notation made by Ms. Atkinson on Plaintiff's Form I-485 Application with respect to question 3.C is a circle around Plaintiff's response of "None." Notably, there is no tick mark next to question 3.C indicating that Ms. Atkinson actually read the question to Plaintiff. Further, Ms. Atkinson's interview was not recorded, so even if Ms. Atkinson posed question 3.C to Plaintiff, there is no evidence that she asked question 3.C in its entirety or, if only partially, that she specifically asked about foreign military service. Although the Record of Proceedings contains a declaration from Ms. Atkinson with statements about her standard practice for interviewing applicants for adjustment of status and statements about how she "would have" conducted the interview of Plaintiff, the Court is unpersuaded by this evidence. First, Ms. Atkinson prepared her declaration nearly eight years after the interview. Second, Ms. Atkinson did not appear at trial and Plaintiff never had the opportunity to question Ms. Atkinson about her recollection of the interview. Third, both Plaintiff and his wife credibly testified at trial that they do not remember Ms. Atkinson asking about foreign military service. Taking the foregoing evidence into consideration, the Court concludes that there is insufficient evidence that Plaintiff offered false testimony during his November 13, 2000 interview regarding his service in the Bosnian military with the intent to obtain an immigration benefit.

Next, the Government contends that Plaintiff gave false testimony regarding his participation in the Territorial Defense and the Bosnian army when he applied for naturalization. As an initial matter, the parties dispute whether question 8a under Part 10.B of Plaintiff's Form N-400 Application

required Plaintiff to disclose military service.  As stated above, this question reads: "Have you **EVER** been a member of or associated with any organization, association, fund, foundation, party, club, or similar group in the United States or in any other place?"  ROP 108.  The Government asserts that the question is purposefully broad to elicit all relevant information about Plaintiff so that it can make a proper determination about his eligibility for naturalization.  Thus, it contends that the question required disclosure of military service and affiliations, and that Plaintiff checked the box "no" in response to this question with the subjective intent to deceive in order to obtain immigration benefits.

Plaintiff, however, argues that the question only calls for disclosure of private organizations with memberships.  He testified that because the Territorial Defense was an unorganized group of citizens and not a private organization, he did not list his participation in the Territorial Defense in response to this question.  Similarly, Plaintiff testified that because he believed the Bosnian army to be a government institution, not a private organization, he did not list it in response to this question.

The Court agrees with Plaintiff that by its plain language, question 8a does not request disclosure of military service or other military groups.  This construction is supported by the fact that question B under Part 6 specifically requests military service as part of the applicant's work history.[2] ROP 104.  If military service was to be included in response to question 8a, the Application would have expressly included it among the categories of groups listed in the question.[3]  Moreover, the

---

[2]  Plaintiff testified that he did not list his military service in response to question B under Part 6 because it was limited to a five-year period preceding the application.  Tr. 66:3-13.

[3]  The Government's charge that Plaintiff proffered false testimony by failing to disclose information about his military service in response to question 8a is also problematic when considered in the context of the immigration application process.  Particularly, the objective of the naturalization application process is to elicit thorough, frank responses from the applicant so as to enable USCIS to make an informed assessment of the applicant's eligibility for citizenship.  Accepting the Government's position would mean that, if in response to questions that the Government itself characterizes as broad and open-ended, an applicant does not include involvement with a particular entity because, as is the case here, the applicant misunderstood the question or genuinely believed that the entity did not fall within the scope of the question, and later *voluntarily discloses* involvement with that entity, the applicant's response may be a basis for the Government to find that the applicant either intentionally withheld information when completing the written application or provided inconsistent testimony and therefore lacks good moral character.  Thus,

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Court is unpersuaded by the Government's argument that the categories listed in the question

2  encompass military service.  Rather, the Court agrees with Plaintiff that neither the Bosnian army or

3  the Territorial Defense qualify as an "organization, association, fund, foundation, party, club, or

4  similar group listed" for purposes of question 8a.  The Court therefore finds no evidence that Plaintiff

5  failed to disclose his participation in these groups with the intent to deceive the government to further

6  his naturalization application.  *See Hamdi v. USCIS*, 2012 WL 632397, at *11 (C.D. Cal. Feb. 25,

7  2012) (finding that applicant did not give false testimony in response to question 8a of N-400

8  Application and finding that if the applicant answered the "vaguely worded question inaccurately,"

9  he did not do so with the requisite intent).  Further, because question 8a did not require Plaintiff to list

10 his participation in the Bosnian army or the Territorial Defense, the Government's charge that

11 Plaintiff proffered false testimony when he orally amended his response to include other groups and

12 associations, but omitted the Bosnian army and Territorial Defense, also lacks merit.

13         The Government also asserts that Plaintiff failed to disclose his membership in Tablighi

14 Jamaat in response to question 8a.  However, as indicated above, based upon Plaintiff's testimony,

15 the Court finds that Tablighi Jamaat is an informal Muslim religious practice, not an organized entity

16 akin to the types of formal groups identified in question 8a.  Plaintiff's non-disclosure of his practice

17 of Tablighi Jamaat in response to question 8a therefore was not false testimony.  Furthermore,

18 Plaintiff voluntarily disclosed his practice of Tablighi Jamaat during his naturalization interview on

19 September 26, 2007.  ROP 117-19.  Plaintiff's disclosure of such information evinces an intention to

20 provide the Government with all information necessary for it to make its decision on his Form N-400

21 Application, not an intention to hide information, as the Government advances.

22         Third, the Government contends that Plaintiff proffered false testimony about the type of

23 weapons he carried when participating in the Territorial Defense.  Specifically, the Government

24 _____

25 under the Government's reasoning, if during the interview process the applicant learns that his/her
   written response to a question was incomplete, the applicant would be better served by not
26 disclosing such information in an effort to avoid any charge of false testimony.  This approach
   thwarts, rather than encourages, a full and forthright discussion of the application during the
27 interview process.

28

                                                    22

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    argues that Plaintiff's failure to disclose that he had carried an AK-47 along with a pistol when first

2    asked what weapons he carried amounts to false testimony.  However, Plaintiff credibly testified that

3    it was only after the September 2007 interview that he remembered carrying an AK-47 while serving

4    in the Territorial Defense.  Plaintiff also credibly testified that, rather than omit this fact, he

5    voluntarily disclosed that he carried an AK-47 at the subsequent naturalization interview because he

6    wanted to be honest and provide the government with all the information he could recall.  The

7    Government's argument that Plaintiff proffered purportedly inconsistent statements about the

8    weapons he carried in an effort to minimize his involvement in activities surrounding the Bosnian

9    war and to further his naturalization application is unconvincing.  At no point did Plaintiff deny

10   carrying any weapons while participating in the Territorial Defense.  To the contrary, Plaintiff was

11   forthright about the fact that he carried a pistol and – after remembering that on a few occasions may

12   have also handled an AK-47 – disclosed this fact as well.  Plaintiff's disclosure of this information

13   about the AK-47 demonstrates a willingness to provide the adjudications officer with a complete

14   picture of the nature of his activity with the Territorial Defense, rather than an intention to evade an

15   investigation into such involvement.  Thus, the Court finds that Plaintiff's statements regarding the

16   weapons he carried do not amount to false testimony and were not made with the intent to obtain an

17   immigration benefit.

18           Finally, the Government contends that Plaintiff  proffered false testimony with respect to

19   questions 23 and 24 of his Form N-400 Application.  As indicated above, Plaintiff answered "no" to

20   questions 23 and 24 on both his 2003 N-400 Application and his 2007  N-400 Application.  At his

21   March 4, 2004 interview on the first N-400 Application, Plaintiff affirmed his answers of "no," to

22   both questions.  At the October 22, 2009 interview, he orally affirmed his responses and maintained

23   that despite USCIS's determination that he lied and given false or misleading information to a

24   government official, he never did.  The Government contends that because Plaintiff had previously

25   given false and misleading responses in his Form I-485 Application and his N-400 Application,

26   Plaintiff's oral affirmation of his "no" response amounted to false testimony.  However, as discussed

27   above, because the Court finds that Plaintiff did not provide false or misleading information in

28

23

1    connection with his adjustment of status or naturalization applications or any interviews on those

2    applications, there is no basis for this Court to conclude that Plaintiff's oral affirmation of his

3    responses to questions 23 and 24 to his 2007 N-400 Application amounted to false testimony.

4                                         **IV.  CONCLUSION**

5            In sum, based on the record evidence and testimony at trial, the Court finds that Plaintiff did

6    not provide false testimony in connection with his Form I-485 or N-400 Applications.  In the

7    instances where Plaintiff's responses were deficient, Plaintiff proffered reasonable, credible

8    explanations for the omissions.  Moreover, throughout the interview process, Plaintiff consistently

9    volunteered information with the intention of providing USCIS with a full and complete picture of his

10   background and affiliations to enable it to make its decision.  The Court therefore finds that Plaintiff

11   has met his burden of establishing that during the three years immediately preceding the date he filed

12   his 2007 N-400 Application, he was a person of good moral character.  Accordingly, having satisfied

13   the statutory requirements for naturalization set forth in 8 U.S.C. § 1430(a), the Court holds that

14   Plaintiff is eligible for naturalization.

15           The Court therefore **GRANTS** Plaintiff's Petition.

16           **IT IS SO ORDERED.**

17

18   Dated: March 21, 2012

19                                                        _____

20                                                        Maria-Elena James
                                                          Chief United States Magistrate Judge

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

24