UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| MIRSAD HAJRO, | No. C 10-1772 MEJ |
| Petitioner, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| ROBIN BARRETT, San Francisco Field Office Director; United States Citizenship and Immigration Services, | **RE: Dkt. No. 60** |
| Defendant. | |

## INTRODUCTION AND BACKGROUND

Mirsad Hajro initiated this action against the Government in April 2010 by filing a Petition, pursuant to 8 U.S.C. § 1421(c), that sought de novo review of the United States Citizenship and Immigration Services' (USCIS) denial of his Form N-400 Application for Naturalization. Dkt. No. 1. Three months earlier, USCIS had denied Hajro's naturalization application on the ground that he had given false testimony and consequently lacked the good moral character required for naturalization. The Government moved for summary judgment on Hajro's Petition in October 2010. Dkt. No. 14. The Court denied the Government's Motion, holding that there was a genuine dispute of material fact on the issues of whether Hajro gave false testimony and whether he made any statement with the intent to deceive the Government to obtain an immigration benefit. Dkt. No. 27. The Court then set the matter for a bench trial to be conducted in November 2011. Following trial, the Court issued its Findings of Fact and Conclusions of Law, in which it granted Hajro's Petition, concluding as follows:

> In sum, based on the record evidence and testimony at trial, the Court finds that Plaintiff did not provide false testimony in connection with his Form I-485 or N-400 Applications. In the instances where Plaintiff's responses were deficient, Plaintiff proffered reasonable, credible explanations for the omissions. Moreover, throughout

the interview process, Plaintiff consistently volunteered information with the intention of providing USCIS with a full and complete picture of his background and affiliations to enable it to make its decision. The Court therefore finds that Plaintiff has met his burden of establishing that during the three years immediately preceding the date he filed his 2007 N-400 Application, he was a person of good moral character. Accordingly, having satisfied the statutory requirements for naturalization set forth in 8 U.S.C. § 1430(a), the Court holds that Plaintiff is eligible for naturalization.

Dkt. No. 57.

Now before the Court is Hajro's Motion for Attorneys' Fees and Costs. Dkt. No. 60. Hajro seeks to recoup from the Government — pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2142(d) — the $67,705.00[1] in fees and expenses he incurred throughout these proceedings. *Id.* The Government has filed an Opposition to Hajro's Motion, to which he has filed a Reply. Dkt. Nos. 66, 72. Because the Court finds that this matter is suitable for disposition based on the parties' briefs and that oral argument would not assist the Court in its decision, the hearing set for September 20, 2012 is **VACATED**. Civil Local Rule 7-1(b). Having considered the parties' arguments and reviewed the record in this matter, the Court **GRANTS IN PART** Hajro's Motion for Attorneys' Fees and Costs, as set forth below.

## DISCUSSION

"For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)(A)).[2] In its Opposition, the Government opposes Hajro's

---

[1] Hajro's Motion initially sought $65,458.48 from the Government, but his counsel billed an additional 11.3 hours and incurred more expenses (photocopying, computer assisted legal research, and postage) after filing the Motion, for which Hajro also seeks reimbursement.

[2] 28 U.S.C. § 2412(d)(1)(A) states: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or special circumstances make an award unjust."

2

Motion on only three grounds. First, it argues that Hajro's fee request should be denied because he failed to follow Civil Local Rule (L.R.) 54-5(a) and meet and confer with the Government prior to filing his Motion. Second, the Government contends that Hajro should not be awarded his attorneys' fees because its legal positions throughout these proceedings were "substantially justified." Lastly, the Government takes issue with the reasonableness of Hajro's request for fees with respect to two items: (1) his Freedom of Information Act (FOIA) request to the Federal Bureau of Investigation (FBI), which consists of two billable hours for $350.12 in total fees; and (2) the fees requested in connection with the filing of this Motion, which the Government argues is improper since the parties could have reached a settlement if Hajro complied with the Court's meet and confer requirement. The Court analyzes the Government's arguments in turn below.

**A. Hajro's Failure to Meet and Confer**

Civil Local Rule 54-5(a) provides that before any motion for attorneys' fees is filed, counsel for the respective parties must meet and confer for the purpose of resolving as many disputed issues as possible. Hajro concedes that he failed to comply with this requirement. Due to this failure, the Government argues that his entire fee application should be denied. The Court finds that such an order would be too draconian of a sanction for what appears to be an innocent mistake made by Hajro's counsel. In the Reply, Hajro's counsel explains that he discussed the Motion for Attorneys' Fees and Costs with the Government before it was filed. Supplemental Declaration of Kip Evan Steinberg (Steinberg Supp. Decl.), Dkt. No. 72, Ex. A at ¶ 3. This discussion focused on procedural issues, such as the deadline to file the Motion and the proposed hearing date. *Id.* Although Hajro's counsel did not send the Government a copy of the actual Motion before it was filed, he explains that this was simple oversight on his part, and there is no evidence that there was any bad faith involved. *See* Reply at 1-5. After the Government filed its Opposition — in which the Government pointed out that Hajro did not comply with the meet and confer requirement — Hajro's counsel immediately contacted the Government for the purpose of meeting and conferring about the disputed fee issues. Steinberg Supp. Decl. at ¶ 5. The parties did meet and confer regarding the issues in the Motion, but were unable to reach a settlement. *Id.* at ¶ 21. Based on these circumstances, the Court

finds that Hajro's counsel's oversight in failing to meet and confer with the Government before filing this Motion was an innocent mistake that was remedied by his subsequent efforts to meet and confer with opposing counsel. Notably, Hajro's counsel is not seeking any fees for researching and drafting the argument in the Reply with respect to this issue. *Id.* at ¶ 23 (in requesting fees for the 371.5 hours billed in this matter, Hajro's counsel provides that he has "excluded 7 hours spent on the 'meet and confer' section of the reply brief and the supplemental declarations . . . . from these totals."). Accordingly, Defendants' request to disallow over $60,000 in attorneys' fees based on Hajro's counsel's minor error goes too far and is denied.

**B. Whether the Government's Legal Position was Substantially Justified**

To establish that its position was substantially justified, the Government must show that its conduct before and during the litigation was reasonable under the circumstances. *Or. Envtl. Council v. Kunzman*, 817 F.2d 484, 498 (9th Cir. 1987). That the Government lost at trial does not raise a presumption that its conduct was unjustified. *Id.* The Government, however, does bear the burden to establish that its position was substantially justified in both law and fact. *Id.*

In its Opposition, the Government contends that it was required to deny Hajro's application for naturalization because he gave false testimony and therefore could not establish himself as a person of "good moral character" under 8 U.S.C. § 1427. The Government supports this position in the same manner as it did on summary judgment and during the bench trial, arguing that Hajro claimed in 2000 that he had not been a member of or affiliated with any military organization (which was not true since he later admitted that he had been a member of the Bosnian army). If the Government had clear and direct evidence of this false testimony, then its contention that its legal and factual positions were substantially justified would be much more persuasive. But, as the Court explained in its Findings and Conclusions of Law Following Bench Trial, the Government did not have such evidence. *See* Dkt. No. 57. The evidence adduced at trial demonstrated that at the time Hajro completed the Form I-485 Application, he had limited English language skills and interpreted the question at issue as asking about service in the United States military abroad. *Id.* at 19-20. This mistaken interpretation was reasonable and no evidence was presented by the Government that

Hajro's failure to disclose his involvement in the Bosnian army was motivated by an intent to deceive the Government. *Id.* In the same manner, the Government's charge that Hajro provided false testimony when he orally affirmed in his November 2000 interview that he did not serve in any foreign military was also not supported by the evidence. *Id.* There was no direct evidence that the Government actually read the question at issue to Hajro, and, even if it did, that Hajro was ever specifically asked about whether he served in any foreign military. *Id.* Without any clear evidence that Hajro affirmatively answered "no" to a specific question about his foreign military service, this Court finds that it was not reasonable for the Government to conclude that Hajro had provided false testimony and this was motivated by an intent to deceive the Government so that his adjustment of status application would be approved. Because this factual position was unreasonable, the Court also finds that the Government has not met its burden to establish that its legal positions throughout these proceedings were substantially justified.[3] *See League for Coastal Prot. v. Kempthorne*, 2006 WL 3797911, at *5 (N.D. Cal. Dec. 22, 2006) (finding that the government failed to meet its burden under EAJA to show that its litigation position was substantially justified based on the same reasons as those expressed in the court's previous order granting the plaintiff summary judgment). Accordingly, the Government's argument is denied and Hajro is entitled to recover his reasonable attorneys' fees and costs under EAJA.

**C. Reasonability of Hajro's Requested Fees**

"Once a plaintiff satisfies the conditions for recovering attorneys' fees under [EAJA], the Court must determine what fee is 'reasonable.'" *Lucas v. White*, 63 F.Supp.2d 1046, 1057 (N.D. Cal. 1999). This process is essentially the same as the process used in other fee motions before federal courts. *Id.* The Court must first determine the number of hours reasonably expended in the litigation and then multiply that figure by a reasonable hourly rate. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). "This figure, which is commonly referred to as the lodestar, may then be

---

[3] To the extent that the Government argues in its Opposition that Hajro lied about his involvement in Tablighi Jamaat or any other part of his naturalization application, those arguments are denied for the same reasons as outlined in the Findings of Fact and Conclusions of Law Following Trial. *See* Dkt. No. 57.

5

increased or decreased based on certain factors that are not subsumed within the initial calculation of the lodestar." *Id.* "However, such upward or downward adjustments are 'the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee.'" *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)).

With respect to the reasonability of Hajro's requested fees, the Government first argues that any fees related to Hajro's FOIA request should be disallowed. On April 26, 2010, Hajro's counsel billed two hours for the purpose of determining whether Hajro had a criminal record. These two hours consisted of making a FOIA request to the FBI and a FBI ID report request pursuant to 28 C.F.R. § 16.30-33. Steinberg Supp. Decl. at ¶ 22. Based on these requests, Hajro's counsel learned that his client had no prior criminal convictions. *Id.* The Government argues that these fees are unreasonable because Hajro's criminal history was never at issue during the litigation. Hajro's counsel responds by pointing out that if his client did have a criminal conviction, the Government could have introduced that at trial. Thus, according to Hajro's counsel, it was prudent lawyering on his part to spend two hours to learn about his client's criminal history and prepare for such an issue if it was ever raised. The Court agrees and finds that the minimal amount of time expended to submit a FOIA request was reasonable under the circumstances.

The Government then contends that Hajro should not recover any fees in connection with the preparation of this Motion due to his failure to meet and confer pursuant to Civil L.R. 54-5(b). As the Court explained earlier, Hajro's failure to meet and confer — while improper — was an oversight that was remedied to some degree by counsel's efforts to meet and confer after the filing of the Motion. The Government's position that the Motion "might not have been necessary" had there been a proper meet and confer session is not persuasive because the parties did meet and confer after the Motion was filed and were still unable to reach a settlement on any of the disputed issues. *See* Opp'n at 7. Accordingly, the Court finds it is not unreasonable for Hajro to recover the fees associated with the filing of his fee application. *See Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163-65 (1990) (upholding an award of attorneys' fees incurred in moving to obtain the underlying attorneys' fees in an EAJA matter).

Besides raising the above two issues, the Government's Opposition does not contest the reasonableness of Hajro's other requested fees — neither the hours expended by his counsel nor the hourly rate.[4] Nonetheless, the Court has reviewed Hajro's Motion as well as his counsel's declarations and time sheets to determine whether the hours expended and fees incurred were reasonable. The Court first finds that the amount of work required by this matter warranted the 371.5 hours expended by counsel. With respect to the hourly rate, Hajro only seeks to recover the statutory maximum rate available under EAJA. The statutory rate is $125 per hour; however, EAJA allows a court to enhance the statutory maximum of $125 per hour for an increase in the cost of living due to inflation. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit provides that this increase can be calculated "by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers." *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005). Pursuant to *Thangaraja* and the authority under EAJA, the Ninth Circuit has established statutory maximums for work performed in the relevant years for which Hajro seeks fees. *See* Statutory Maximum Rates Under the Equal Access to Justice Act, http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited September 17, 2012). The statutory maximum adjusted for the cost of living due to inflation for 2010 is $175.06 per hour, for 2011 is $180.59 per hour, and for the first half of 2012 is $183.73 per hour. *Id.* The

---

[4] In a footnote, the Government provides that Hajro has already been awarded statutory costs by the Clerk. To the extent that this footnote is an argument that Hajro should not be awarded any costs as a part of his Motion, this argument is denied. On July 17, 2012, the Clerk awarded Hajro $1857.80 in statutory costs for filing fees, witness fees, and transcripts. With this Motion, Hajro requests $874.34 for other fees and expenses, including (1) $261.38 for photocopying; (2) $360.00 for computer assisted legal research on Westlaw; (3) $103.46 for postage; (4) $90.00 for mileage; and (5) $59.50 for parking. *See* Steinberg Supp. Decl. at ¶ 25. The Government does not provide any argument or authority that these other costs are not permitted under EAJA or are unreasonable. The Court finds them reasonable and consequently GRANTS Hajro's request for other expenses in the amount of $874.34. *See* 28 U.S.C. § 2412(d)(1)(A) ("Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees *and other expenses*. . . .") (emphasis added); *Johnson v. Astrue*, 2008 WL 3984599, at *3 (N.D. Cal. Aug. 27, 2008) (awarding the plaintiff expenses for computer assisted legal research, noting that "EAJA authorizes the award of not only reasonable attorney's fees but also reasonable expenses.").

Court finds this statutory maximum rate reasonable and awards it in this matter.

Hajro's fee application, however, uses the wrong statutory maximum hourly rate for the calculation of his 2012 fees. *See* Declaration of Kip Evan Steinberg (Steinberg Decl.), Dkt. No. 61, Ex. 7 at ¶ 4. Hajro's fee request for 2012 is based on the hourly rate of $191.86 rather than the correct hourly rate from the Ninth Circuit website: $183.73.[5] The Court therefore substitutes the Ninth Circuit's statutory maximum rate and recalculates Hajro's fee request for 2012 as shown below. Accordingly, Hajro is entitled to recover the following attorneys' fees and costs from the Government:

| Fees | Year | Hours Reasonably Spent | Reasonable Hourly Rate | Total Award |
|---|---|---|---|---|
|  | 2010 | 124.6 hours | $175.06 | **$21,182.48** |
|  | 2011 | 208.7 hours | $180.59 | **$37,689.13** |
|  | 2012 | 38.2 hours | $183.73 | **$7,018.49** |
| **Total** | N/A | 371.5 hours | N/A | **$65,890.10** |
|  |  |  |  |  |
| **Costs** | N/A | N/A | N/A | **$874.34**[6] |
| **Total (Fees+Costs)** | N/A | N/A | N/A | **$66,764.44** |

///
///
///
///
///
///

---

[5] It appears that at the time Hajro filed his fee application, the Ninth Circuit had not yet posted EAJA's statutory maximum hourly rates on its website. Hajro attempted to calculate this rate on his own by using the Bureau of Labor Statistics' consumer price index. Considering the Ninth Circuit has now posted its rate for the first half of 2012, the Court uses this rate ($183.73) in its lodestar calculation.

[6] *See* footnote 3, *supra*.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Hajro's Motion for Attorneys' Fees and Costs. The government shall pay Hajro $66,764.44 in attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: September 18, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge